COOK, COMMISSIONER OF REVENUES, *v.* WOFFORD,
CHANCELLOR.

4-7879                                    192 S. W. 2d 550

Opinion delivered February 25, 1946.

R. S. *Wilson,* for appellant.
*Daily & Woods,* for appellee.

Robins, J.  The Coca-Cola Bottling Company, hereinafter referred to as the Company, is a domestic corporation with its principal place of business in the city of Ft. Smith.  Pursuant to the requirements of the 1929 income tax act (Act 118 of the Acts of 1929, p. 573 *et seq.*) the Company filed its income tax return for the year 1943, and paid the taxes shown to be due on said return. In 1945, the Commissioner of Revenues made an examination and audit of said return and on October 19, 1945, issued to the Company a deficiency letter setting up a deficiency of $4,974.59 in the payment of taxes due by the Company.  This letter granted the Company 30 days from its date to file written protest and request for a hearing, and within the time allowed, to-wit, on October 23, 1945, the Company filed its written protest and requested a hearing, which was accorded and had on November 13, 1945, and on November 14th the Commissioner wrote the Company that its protest was disallowed. Within 30 days from the date of that letter, suit was brought in the Sebastian chancery court to review the action of the Commissioner.  It was alleged that this action was taken pursuant to § 14055, Pope's Digest, which was enacted as § 32 of said Act 118, and that the Commissioner had erroneously set up the deficiency to satisfy which, he claims a lien upon the real and personal property of the Company.

It was conceded by the Company that through an unintentional error, there was a deficiency for the year 1943, of $1,240.96 which the Company tendered at the hearing had on November 13, 1945, and that tender, with accrued interest, was renewed, and the Company offered also, if the Commissioner required, to pay into the registry of the court the full amount of the deficiency claimed by the Commissioner, with accrued interest, the same to be held pending review by the court and the final determination of the case.  Wherefore, it was prayed by the Company that the action of the Commissioner be reviewed.

The Commissioner filed a motion to dismiss the proceeding upon the ground that the chancery court of Se-

bastian county did not have the jurisdiction to hear it, and when that motion was overruled the Commissioner applied here for an order prohibiting the Sebastian chancery court from further proceeding, and states in his brief that the sole issue for our determination is, whether the Sebastian chancery court has jurisdiction to review the Commissioner's action herein recited. The decision of this question involves the construction of §§ 26, 31 and 32 of Act 118.

In imposing this additional tax assessment, the Commissioner proceeded under § 26 of Act 118, now appearing as § 14049, Pope's Digest, which section reads as follows:

"If the Commissioner discovers from the examination of the return or otherwise that the income of any taxpayer, or any portion thereof, has not been assessed, he may at any time within two (2) years after the time when the return was due assess the same and give notice to the taxpayer of such assessment, and such taxpayer shall thereupon have an opportunity, within thirty days, to confer with the Commissioner as to the proposed assessment.

"The limitation of two (2) years to the assessment of such tax or additional tax shall not apply to the assessment of additional taxes upon fraudulent returns. After the expiration of thirty days from such notification the Commissioner shall assess the income of such taxpayer or any portion thereof which he believes has not theretofore been assessed and shall give notice to the taxpayer so assessed, of the amount of the tax and interest and penalties, if any, and the amount thereof shall be due and payable within ten days from the date of such notice.

"The provisions of this Act with respect to revision and appeal shall apply to a tax assessed. No additional tax amounting to less than one dollar shall be assessed. *Ib.* § 26." This section was amended by § 4 of Act 140 of the Acts of 1939, to allow the Commissioner 3 years in which to make this examination and reassessment.

Section 31 of Act 118, now appearing as § 14054, Pope's Digest, reads as follows:

"A taxpayer may apply to the Commissioner for revision of the tax assessed against him, at any time within one year from the time of the filing of the return from the date of the notice of the assessment of any additional tax. The Commissioner shall grant a hearing thereon and if, upon such hearing, he shall determine that the tax is excessive or incorrect, he shall resettle the same accordingly and adjust the computation of the tax accordingly.

"The Commissioner shall notify the taxpayer of his determination and shall refund the taxpayer the amount, if any, paid in excess of the tax found by him to be due. *Ib.* § 31."

It is conceded that following the word "return" and preceding the word "from" in this § 31, the word "or" should be inserted, as having been omitted from the act as passed. This would be authorized and required even though the word "or" had not been omitted, to give the act its manifest and intelligent meaning. *State ex rel.* v. *Chicago Mill & Lbr. Corp.*, 184 Ark. 1011, 43 S. W. 2d 26.

Section 32 of Act 118, now appearing as § 14055, Pope's Digest, reads as follows:

"The determination of the Commissioner upon any application made by a taxpayer for revision of any tax, may be reviewed in any court of competent jurisdiction by a complaint filed by the taxpayer against the Commissioner in the county in which the taxpayer resides or has his principal place of business, within thirty days after notice by the Commissioner of his determination, given as provided in § 31 of this act. Thereupon appropriate proceedings shall be had and the relief, if any to which the taxpayer may be found entitled, may be granted, and any taxes, interest or penalties paid found by the court to be in excess of those legally assessed, shall be ordered refunded to the taxpayer, with interest from time of payment.

"The collection of income taxes under this act shall not be stayed or prevented by any injunction, writ or order issued by any court; and no writ, order or process of any kind, staying or preventing the Commissioner from taking any steps or proceedings in the assessment or collecting of any income tax, whether the same is legally due or not, will be granted by any court or judge; but in all cases, the person against whom any income tax shall stand charged shall be required to pay the same, and thereupon shall have his remedy as hereinafter provided.

"In all cases in which any income taxes are now or shall be hereafter charged by the Commissioner against any person or corporation, and the Commissioner shall claim the payment of the taxes so charged, or shall take any steps or proceedings to collect same, the person against whom such taxes are charged, or against whom proceedings shall be taken, shall if he conceives the same to be illegal or unjust, pay the said taxes including the penalties notwithstanding under protest in writing such funds as the Commissioner shall be authorized to receive; and upon such payment being made, the Commissioner shall pay over the taxes and penalties if any, so collected into the State Treasury, giving notice at the time to the State Treasurer that the payment was made under protest, whereupon the State Treasurer shall credit all such receipt to a special fund entitled 'Income Tax Protest Funds.'

"The person so paying said taxes under protest may, at any time within 30 days thereafter but not afterwards, bring an action against the Commissioner for the recovery thereof in the chancery court of Pulaski county; and if it be determined in said action that such taxes and penalties, if any, were wrongfully or illegally collected for any reasons going to the merits, then the court before whom the case is tried shall certify that same were wrongfully collected and ought to be refunded, and thereupon the Commissioner shall issue his order to the State Treasurer to refund the said taxes and penalties, if any, to be repaid in conformity with the order of the

court, and in preference to other claims against the State Treasurer.

"There shall be no other remedy in any case of the illegal wrongful collection of income taxes or the attempt to collect same than that provided in this act. *Ib.* § 32."

It is the contention of the Commissioner that this legislation, when properly construed, confers upon the taxpayer only one remedy and method of obtaining redress, and that is, to pay the tax imposed, and thereafter bring suit in the Pulaski chancery court for its recovery, or for the recovery of so much thereof as was wrongfully assessed and paid, but that the taxpayer must first pay before he will be accorded any hearing or relief. On the other hand, the taxpayer insists that this is not his only remedy but that he has another remedy, provided he acts within the time and manner required by the act.

Unquestionably the third and fourth paragraphs of § 4, above quoted, give the taxpayer the remedy which the Commissioner says the taxpayer must pursue. If the taxpayer elects to rely upon this remedy, he is not required to ask a review of the assessment within 30 days after receipt of the notice of the Commissioner's final determination. He may, if he so elects, wait until the Commissioner has issued a warrant to the Sheriff in the nature of the execution, as authorized by § 27 of Act 118, and until a copy thereof has been filed by the Sheriff "with the clerk of the county" to have the effect of a judgment, and then pay the additional taxes to the Commissioner under protest, and thereafter, within 30 days, after such payment, bring suit in the Pulaski chancery court to recover the payment. When the payment under protest has been made, the Commissioner is required by § 32 of the act to ". . . pay over the taxes and penalties, if any, so collected into the state treasury, giving notice at the time to the State Treasurer that the payment was made under protest, whereupon the State Treasurer shall credit all such receipt to a special fund entitled 'Income Tax Protest Fund.' "

If the taxpayer has not otherwise proceeded, but has relied upon this remedy, he encounters the hazards, which we need not here discuss, of recovering money which he erroneously paid.

But we think the taxpayer has another remedy which is conferred by § 32, read in connection with § 26. Under § 32 the taxpayer has the right, after making application for a revision of the assessment of the taxes against him, and after the Commissioner has made his "determination" that the taxpayer is not entitled to the relief prayed, to have that determination reviewed in any court of competent jurisdiction, by a complaint filed in the county in which the taxpayer resides or has his principal place of business, but this he must do within 30 days after having been given notice of the Commissioner's determination.

The Commissioner insists, however, that these provisions apply only to the case of a taxpayer who claims he has paid too much taxes, and seeks to recover the excess. But we think this remedial provision may not be thus restricted as the act provides that "upon *any* application . . . for the revision of *any* taxes" suit to review the assessment may be brought, etc. Certainly here the taxpayer is asking for a revision of his taxes which the Commissioner seeks to collect.

It is not contended that the Company has not strictly and exactly complied with the provisions of §§ 26, 31 and 32 of Act 118, to secure a revision of its assessments, but it is contended that its suit offends against two of the provisions of § 32, of Act 118.

The first of these is that "the collection of income taxes under this act shall not be stayed or prevented by any injunction, writ or order issued by any court; and no writ, order or process of any kind, staying or preventing the Commissioner from taking any steps or proceedings in the assessment or collection of any income tax, whether the same is legally due or not, will be granted by any court or judge; but in all cases, the person against whom any income tax shall stand charged shall be re-

quired to pay the same, and thereupon shall have his remedy as hereinafter provided.''

It may be answered that the Company has not sought to enjoin the Commissioner from any proceeding he is authorized by law to take, nor is there any attempt to defeat or delay the collection of any taxes with which the Company stands charged.

The Company offered to tender in the court the full amount of taxes which the Commissioner seeks to collect, and that money will be available to satisfy any demand the Commissioner may establish. But for this tender a different situation might exist, as it might have been contended and shown that but for the tender the collection of the taxes may have been defeated or delayed, in which event the court would have the power to make any necessary and appropriate order to prevent jeopardizing the collection of the taxes. It may be further said that the Company is not seeking to defeat or delay the collection of a tax with which it stands charged, as it will not be charged with any taxes, which it is legally required to pay, until its protest has been heard and reviewed in the manner provided by law.

The second provision of § 32, which it is contended this proceeding offends against, is that found in the last paragraph of that section reading as follows: ''There shall be no other remedy in any case of the illegal or wrongful collection of income taxes or the attempt to collect same than that provided in this Act.'' But that is the question we are considering, whether the taxpayer is pursuing a remedy provided by the Act. We think he is, although the question may not be free from doubt, but in such cases where it is sought to impose and collect a tax, any existing doubt must be resolved in favor of the taxpayer. Among the numerous and latest cases so holding are: McLeod, Com. of Rev., v. Commercial Nat. Bank, Exec., 206 Ark. 1086, 178 S. W. 2d 496; Moses, Exec., v. McLeod, Com. of Rev., 207 Ark. 252, 180 S. W. 2d 110.

832

It follows from what we have said that the relief prayed by the Commissioner should not be granted and it is so ordered.

Chief Justice GRIFFIN SMITH dissents.